UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DIANA HECKMAN, an individual,
ALICIA BONDI, an individual, and
TANIKA WARDEN, an individual,

                        Plaintiffs,

-against-

NEW YORK STATE POLICE and
DIRECTOR RAY WICKENHEISER.

                        Defendants.

**COMPLAINT
WITH JURY TRIAL DEMAND**

Civil Case No.   1:17-CV-0076
(FJS/DJS)

Plaintiffs Diana Heckman, Alicia Bondi, and Tanika Warden by and through their attorneys, Bailey, Johnson, DeLeonardis & Peck, P.C., as and for their complaint, allege as follows:

## NATURE OF THE ACTION

Plaintiffs Diana Heckman, Alicia Bondi, and Tanika Warden are employees of Defendant New York State Police, employed in the New York State Police Forensic Investigation Center ["NYSP Crime Lab"] located in Albany, New York. This case concerns Defendants' New York State Police and Director Ray Wickenheiser's retaliatory treatment of Plaintiffs Diana Heckman, Alicia Bondi, and Tanika Warden in violation of Title VII of the Civil Rights Act.

## THE PARTIES

### Plaintiffs

#### Diana Heckman

1.    Plaintiff Diana Heckman is an adult female and a citizen of the United States of America who currently resides in the Northern District of New York.

2. Plaintiff Diana Heckman has been employed by the Division of the New York State Police since June 1997.

3. At all times herein referenced, Plaintiff Diana Heckman was a Casework Combined DNA Index System (CODIS) Administrator in the Biological Sciences section of the NYSP Crime Lab.

4. On July 5, 2016, Plaintiff Diana Heckman filed with the Equal Employment Opportunity Commission a Complaint regarding ongoing retaliatory actions taken by the Defendants in violation of Title VII of the Civil Rights Act.

5. On October 28, 2016, Plaintiff Diana Heckman received a 90-day Right to Sue Letter from the Department of Justice.

## Alicia Bondi

6. Plaintiff Alicia Bondi is an adult female and a citizen of the United States of America who currently resides in the Northern District of New York

7. Plaintiff Alicia Bondi has been employed by the Division of the New York State Police since January 2006.

8. At all times herein referenced, Plaintiff Alicia Bondi is employed as a Casework Combined DNA Index System (CODIS) Administrator in the Biological Sciences section of the NYSP Crime Lab.

9. On July 5, 2016, Plaintiff Alicia Bondi filed with the Equal Employment Opportunity Commission a Complaint regarding ongoing retaliatory actions taken by the Defendants in violation of Title VII of the Civil Rights Act.

10. On October 28, 2016, Plaintiff Alicia Bondi received a 90-day Right to Sue Letter from the Department of Justice.

<u>Tanika Warden</u>

11.     Plaintiff Tanika Warden is an adult female and a citizen of the United States of America who currently resides in the Northern District of New York.

12.     Plaintiff Tanika Warden has been employed by the Division of the New York State Police since 1998.

13.     At all times herein referenced, Plaintiff Tanika Warden is employed as a Casework Combined DNA Index System (CODIS) Administrator in the Biological Sciences section of the NYSP Crime Lab.

14.     On July 5, 2016, Plaintiff Tanika Warden filed with the Equal Employment Opportunity Commission a Complaint regarding ongoing retaliatory actions taken by the Defendants in violation of Title VII of the Civil Rights Act.

15.     On October 28, 2016, Plaintiff Tanika Warden received a 90-day Right to Sue Letter from the Department of Justice.

**Defendants**

16.     Defendant New York State Police is an executive agency of the State of New York with an office located at 1220 Washington Avenue, Building 22, Albany, New York 12226-2252.

17.     At all times relevant to this action, Defendant New York State Police is an "employer" of the Plaintiffs as that term is defined by the NYSHRL under New York Executive Law §292(5) and as defined by 42 USC 2000e(b).

18.     At all times relevant to this action, Plaintiffs were employees of Defendant New York State Police as that term is defined in New York Executive Law §292(6).

3

19. At all times relevant to this action, Defendant New York State Police had in excess of 500 employees.

20. Defendant Ray Wickenheiser sued herein individually and in his official capacity as Director, Crime Lab System, New York State Police Forensic Investigation Center is a resident of the State of New York.

21. At all times relevant hereto, Defendant Wickenheiser was a supervisory employee acting as an agent of Defendant New York State Police.

22. At all times relevant hereto, Defendant Wickenheiser was an "aider or abettor" under the Human Rights Law.

23. At all times relevant to this action, Defendant Ray Wickenheiser was an "employee" of the Defendant New York State Police as that term is defined by the NYSHRL under New York Executive Law §292(6).

24. From December 2014 through present, Defendant Wickenheiser is a supervisor of the Plaintiffs.

25. Defendant Wickenheiser personally participated in the unconstitutional and unlawful acts alleged herein.

## JURISDICTION

26. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' New York State law claim under 28 U.S.C. § 1367.

**VENUE**

27. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omission giving rise to Plaintiffs' claims occurred in this district and the Plaintiffs and Defendants reside in the Northern District of New York.

**FACTUAL ALLEGATIONS**

28. At all times relevant to this action, Plaintiffs were working as forensic scientists at the NYSP Crime Lab.

29. As forensic scientists, Plaintiffs' job duties involved scientific evaluation of evidence including DNA analysis.

30. In December 2014, each of the Plaintiffs were "competent" and "proficient" in DNA analysis.

31. In December 2014, each of the Plaintiffs were trained as CODIS Administrators.

32. In December 2014, Plaintiffs held the position of Forensic Scientist IV, CODIS Administrator.

33. On or about, October 22, 2015, Plaintiffs each individually filed a Charge of Discrimination with the Equal Employment Opportunity Commission reporting that they had been subjected to ongoing gender discrimination by the Defendants.

34. Following the October 22nd Charge of Discrimination, Plaintiffs Diana Heckman, Alicia Bondi, and Tanika Warden have been subjected to continuous acts of retaliation by the Defendants.

35. The retaliatory actions taken against the Plaintiffs include, but are not limited to, failing to provide the Plaintiffs with work assignments, shunning and segregating the Plaintiffs from the rest of the workforce, refusing to permit Plaintiffs to return to CODIS work, and

intentionally delaying professional training required for Plaintiffs to perform DNA Analysis and return to their positions as CODIS Administrators, and the constructive demotion of the Plaintiffs.

### *TrueAllele Training*

36. In 2012, the Biological Sciences Section of the NYSP Crime Lab, under the leadership of Dr. Barry Duceman, began introducing a new method of DNA analysis, TrueAllele.

37. TrueAllele, created by Cybergenetics, is a computerized DNA interpretation system that infers genetic profiles from DNA samples.

38. TrueAllele involved a completely different method of analyzing DNA evidence; it varied from the methods previously used by the Plaintiffs and the other forensic scientists in the NYSP Crime Lab.

39. The implementation of TrueAllele required the Plaintiffs and the other forensic scientists in the NYSP Crime Lab to learn an entirely new process for analyzing DNA evidence.

40. While the TrueAllele training was conducted by Cybergenetics, there was no presence by Cybergenetics instructors in the NYSP Crime Lab.

41. The TrueAllele training was provided to 37 of the forensic scientists in the NYSP Crime Lab.

42. The TrueAllele training was completed in groups; there were a total of 5 groups [Group 1, Group 2, Group 3, Group 4 and Group 5] that participated in the TrueAllele training.

43. The TrueAllele training varied with each successive training group. That is, the TrueAllele training provided to Group 1 was different than that provided to Group 2, which was different than the training provided to Group 3 and so on and so forth.

44. The TrueAllele training provided by Cybergenetics proved to be ineffective. The forensic scientists struggled with the training program and the use of the computer software.

45. When concerns regarding the TrueAllele training were communicated to the NYSP Crime Lab's leadership, the response was to allow the forensic scientists to collaborate with one another.

46. The two TrueAllele training coordinators appointed by the New York State Police, Timothy Goble and Jay Caponera, established a collaborative environment for the entire training process, including the Operator 1 and Operator 2 examinations.

47. Trainees were given instructions that they could seek assistance from Timothy Goble, Jay Caponera, Cybergenetics representatives and/or other trainees.

48. The examinations themselves were open book.

49. There were no formal written policies pertaining to training within the NYSP Crime Lab.

50. The unfettered collaboration among and between the forensic scientists was common knowledge within the NYSP Crime Lab and was accepted by the NYSP Crime Lab's leadership.

51. The collaboration amongst and between the forensic scientists on the TrueAllele training had absolutely no effect on any casework or CODIS work.

52. The collaboration amongst and between the forensic scientists had absolutely no effect on any DNA analysis.

53. The collaboration amongst and between the forensic scientists did not result in the mishandling of any evidence.

54. The collaboration amongst and between the forensic scientists did not result in the inflation of any statistic/probability relative to DNA analysis.

55. The completion of the aforementioned examinations would not allow the forensic scientists to actually use TrueAllele on any cases.

56. Following the TrueAllele training, the forensic scientists would then be trained in the NYSP Crime Lab and undergo competency and proficiency testing.

57. The TrueAllele training continued without incident until after the last group [Group 5] began the training.

58. It was at that time that the collaborative activities previously encouraged by the NYSP Crime Lab's leadership suddenly became the subject of intense scrutiny and criticism by the Defendants.

59. The issue of cheating arose in late-September or early-October, 2014.

60. Ultimately, sixteen (16) out of the thirty-seven (37) forensic scientists participated in the TrueAllele training were removed from their job duties.

61. Fifteen (15) of the sixteen implicated in the investigation were female forensic scientists.

62. The sole male scientist implicated in the investigation was closely associated with the female scientists and spoke up in their defense.

63. The implicated scientists including Plaintiffs Diana Heckman, Alicia Bondi and Tanika Warden, were served with Notices of Discipline seeking their termination.

64. The Notice of Discipline served on Plaintiff Alicia Bondi asserted that Plaintiff Bondi used the training materials of her supervisor while completing her TrueAllele training and failed to report and stop the unauthorized sharing of training materials.

65. The Notice of Discipline served on Plaintiff Diana Heckman asserted that she used the training materials of her supervisor while completing her TrueAllele training and failed to report and stop the unauthorized sharing of training materials.

66. The Notice of Discipline served on Plaintiff Tanika Warden asserted that she used the training materials of her supervisor while completing her TrueAllele training and failed to report and stop the unauthorized sharing of training materials.

67. On October 22, 2015, Plaintiffs each filed a Complaint with the EEOC alleging that the State Police and individual defendants engaged in gender discrimination in violation of Title VII.

68. Specifically, Plaintiffs' alleged that male employees who were not associated with the implicated female forensic scientists had engaged in the same behavior as alleged against the female scientists but were not disciplined and/or terminated.

69. On July 30, 2015, Plaintiff Diana Heckman entered into a settlement with New York State.

70. The terms of Plaintiff Diana Heckman's settlement called for her to be reinstated.

71. Plaintiff Diana Heckman returned to work on August 10, 2015.

72. Plaintiff Diana Heckman was told by Defendant Ray Wickenheiser that she needed to complete ethics training in order to return to her previous job duties.

73. Plaintiff Alicia Bondi returned to work on August 17, 2015.

74. At the time Plaintiff Bondi returned to work her disciplinary grievance was still pending and she was removed from her job duties.

75. While Plaintiff Alicia Bondi's grievance was pending Defendant Ray Wickenheiser informed Plaintiff Bondi that regardless of the outcome of her arbitration she

would be required to complete the ethics training and that a founded personnel complaint would remain in her personnel file.

76. Defendant Ray Wickenheiser as Director of the NYSP Crime Lab advised Plaintiff Bondi that she would face the same future professionally at the NYSP Crime Lab regardless of whether she succeeded in her arbitration with the New York State Police.

77. Based on this representation, Plaintiff Alicia Bondi settled her grievance with the New York State Police on March 10, 2015.

78. In offering Plaintiff Alicia Bondi the settlement, the New York State Police represented to Plaintiff Alicia Bondi that she would return to her job as CODIS Administrator and her previous job duties if she settled her arbitration.

79. Plaintiff Alicia Bondi was advised by Defendant Ray Wickenheiser that before she could return to her job duties, she would be required to complete ethics training.

80. Plaintiff Tanika Warden returned to work on October 1, 2015.

81. At the time Plaintiff Warden returned to work her disciplinary grievance was still pending and she was removed from her job duties.

82. While Plaintiff Tanika Warden's grievance was pending Defendant Ray Wickenheiser informed Plaintiff Warden that regardless of the outcome of her arbitration she would be required to complete the ethics training and that a founded personnel complaint would remain in her personnel file.

83. Defendant Ray Wickenheiser as Director of the NYSP Crime Lab advised Plaintiff Warden that she would face the same future professionally at the NYSP Crime Lab regardless of whether she succeeded in her arbitration with the New York State Police.

84. Based on this representation, Plaintiff Tanika Warden settled her grievance with the New York State Police on March 17, 2015.

85. In offering Plaintiff Tanika Warden the settlement, the New York State Police represented to Plaintiff Tanika Warden that she would return to her job as CODIS Administrator and her previous job duties if she settled her arbitration.

86. Plaintiff Tanika Warden was advised by Defendant Ray Wickenheiser that before she could return to her job duties, she would be required to complete ethics training.

87. Plaintiffs' ethics training was purposefully prolonged, delayed, and stalled by the Defendants in excess of six (6) months.

88. The intentional and purposeful refusal of the Defendants to allow Plaintiffs to timely complete their ethics training prevented Plaintiffs from returning to the job duties and obtaining competency training necessary to be reinstated as CODIS Administrators.

89. Ethics training for similarly situated forensic scientists who did not file EEOC Complaints was not prolonged, stalled or delayed by the Defendants.

90. The intentional and purposeful delay in administering Plaintiffs' ethics training was in retaliation for Plaintiffs' complaints of gender discrimination and filing of EEOC complaints against the Defendants.

91. The ethics training required of the Plaintiffs was administered and supervised by Defendant Wickenheiser.

92. Defendant Ray Wickenheiser, as Director of the NYSP Crime Lab, has the authority and power to permit Plaintiffs to attend casework and section meetings.

93. Despite Plaintiffs having finished their ethics training, Defendants prevented and prohibited Plaintiffs from attending casework and section meetings.

94. Other similarly situated forensic scientists who were also implicated in the TrueAllele investigation but did not file EEOC Complaints were permitted to attend casework meetings before even completing their required ethics training.

95. By prohibiting Plaintiffs from attending casework and section meetings, Defendants promoted an atmosphere of segregation and shunning of the Plaintiffs.

96. This punitive treatment of Plaintiffs was furthered when Defendants isolated Plaintiff Diana Heckman from all other Lab employees between March 3, 2016 and March 16, 2016.

97. During this time, Plaintiff Heckman was prevented from socializing with other Lab employees and required to spend eight hours a day segregated from the Lab without contact with co-workers or her superiors.

98. The working conditions to which Plaintiff Diana Heckman was subjected during this time were entirely punitive with the sole purpose of causing Plaintiff Heckman extreme emotional distress.

99. Between February 22, 2016 and March 16, 2016, the three Plaintiffs were "reintegrated" into the Bioscience Section of the Lab.

100. Plaintiffs' "reintegration" involved their placement in a shared office, physically separated from all other forensic scientists.

101. Plaintiffs Tanika Warden, Alicia Bondi and Diana Heckman are being treated differently than those scientists who did not file Charges with the EEOC.

102. This continued segregation is in retaliation for Plaintiffs continued complaints that the Defendants engaged in gender discrimination in violation of Title VII.

103. Defendants continue to promote an atmosphere of shunning and segregation of the Plaintiffs.

104. Plaintiffs, as CODIS Administrators, did not perform casework.

105. Plaintiffs, as CODIS Administrators, are not, as part of their duties, required to testify at criminal trials.

106. The settlement agreements of Plaintiffs Tanika Warden and Alicia Bondi specifically call for these Plaintiffs to be returned to their positions as CODIS Administrators.

107. Plaintiffs completed their ethics training in April 2016.

108. Despite completing their ethics training, Plaintiffs have not been permitted to return to their previous job duties.

109. Despite completion of their ethics training, Plaintiffs have been separated from the entire Bioscience Section of the NYSP Crime Lab.

110. Plaintiffs have been given an office with no other forensic scientists in the vicinity.

111. The conditions of Plaintiffs current work environment serves only a punitive purpose and is in retaliation for Plaintiffs' complaints regarding Title VII violations.

112. Despite completing their ethics training, Plaintiffs work assignment has only included a Databank validation study.

113. At no time in the last 13 years has a CODIS Administrator been required to validate any technology, instrument, technique or chemistry.

114. Previously, validation assignments of this nature would be delegated to Forensic Scientists I, II, III, Senior Laboratory Technicians, or an Intern.

115. The work duties given to the Plaintiffs constitute constructive demotions from their positions as CODIS Administrators.

116. The work duties given to the Plaintiffs constitute constructive demotions from their positions as Forensic Scientists IV.

117. In order to be returned to their positions as CODIS Administrators, Plaintiffs must be retrained in DNA Analysis and competency and proficiency tested in DNA Analysis.

118. In order to be returned to their positions as CODIS Administrators, Plaintiffs must be retrained on CODIS duties and responsibilities.

119. Defendants retrained Plaintiffs in serology.

120. Serology is not required for CODIS Administrators.

121. Competency and proficiency in serology will not permit Plaintiffs to return to their positions as CODIS Administrators.

122. It has been nine (9) months since Plaintiffs have completed the requisite ethics training and Defendants continue to prevent Plaintiffs from returning to their positions as CODIS Administrators.

123. Defendant Wickenheiser, as Director of the Crime Lab, is directly responsible for overseeing the training and testing of the Plaintiffs which will allow them to return to their positions as CODIS Administrators.

124. Defendants have intentionally prolonged and stalled Plaintiffs retraining and competency and proficiency testing in DNA Analysis.

125. Defendants have intentionally prolonged and stalled Plaintiffs retraining in CODIS.

126. Defendants are intentionally stalling Plaintiffs retraining and competency and proficiency testing in retaliation for filing EEOC Complaints and complaining of gender discrimination.

127. Defendants did not prolong or stall the retraining and testing of similarly situated forensic scientists who were also implicated in the TrueAllele investigation and did not file EEOC complaints.

128. Defendants intentional stalling of Plaintiffs retraining and testing in DNA Analysis prohibits Plaintiffs from returning to their positions as CODIS Administrators, effectively demoting the Plaintiffs.

129. Defendants intentional stalling of ethics training, retraining on CODIS Administration, and retraining and testing in DNA Analysis has significantly diminished Plaintiffs material responsibilities and prevents Plaintiffs from returning to the job duties of CODIS Administrators.

130. Defendant Ray Wickenheiser told Plaintiffs that lawsuits filed against the New York State Police in relation to the TrueAllele investigation would hinder their return to their duties as CODIS Administrator.

131. Defendant Ray Wickenheiser told Plaintiffs that negative news media about the New York State Police regarding the TrueAllele investigation would hinder their return to their duties as CODIS Administrators.

132. As a direct, foreseeable and proximate result of Defendants' unlawful actions, Defendants proximately caused Plaintiffs damages and injuries, including but not limited to lost opportunities, pain and suffering, emotional distress, anxiety, loss of pay and benefits, loss of career and reputation in the forensic community.

133. Plaintiffs are entitled to recover punitive and compensatory damages from Defendant.

### FIRST CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### TITLE VII RETALIATION

134. Plaintiffs hereby incorporate by reference each of the allegations set forth herein the preceding paragraphs as if re-alleged fully herein.

135. Plaintiff filing of EEOC Complaints regarding Defendants discriminatory actions constitute protected activity under Title VII of the Civil Rights Act.

136. Plaintiffs have been subjected to materially adverse changes in the terms and conditions of their employment due to their filing of EEOC Complaints.

137. By engaging in the foregoing conduct, Defendants violated rights guaranteed under Title VII of the Civil Rights Act in that Plaintiffs were retaliated against for opposing discrimination and participating in the administrative exhaustion process.

138. By reason of the foregoing conduct, Plaintiffs have sustained damages and are entitled to compensation.

### SECOND CAUSE OF ACTION
### AGAINST DEFENDANTWICKENHEISER
### INDIVIDUALLY FOR RETALIATION IN VIOLATION
### OF NEW YORK STATE HUMAN RIGHTS LAW

139. Plaintiffs hereby incorporate by reference each of the allegations set forth in the preceding paragraphs as if re-alleged fully herein.

140. Defendant Wickenheiser due to his power to do more than carry out personnel decisions made by others in the course of his employment, is considered an "employer" under the Human Rights Law.

141. Alternatively, said Defendant is an "aider and abettor" pursuant to N.Y. Exec. Law §296(6) and therefore his discrimination and/or retaliation is unlawful.

142. Defendant violated rights guaranteed to the Plaintiffs under the Human Rights Law in that he subjected or aided and abetted others in subjecting Plaintiffs to disparate treatment and discrimination in matters relating to their employment because of their opposition to discrimination and participation in the administrative exhaustion processes.

143. Plaintiffs sustained damages by reason of the Defendant's wrongful actions and are entitled to compensation.

**WHEREFORE**, Plaintiffs demand judgment in an amount which will fairly and adequately compensate them for their injuries, damages, suffering and losses, in an amount that exceeds the jurisdictional limits of all lower Courts, together with the costs and disbursements of this action, including attorneys' fees and costs, punitive damages and such other and further relief as the Court may deem just and proper.

Dated: January 23, 2017

By: _____
John W. Bailey
*Attorneys for Plaintiffs*
5 Pine West Plaza, Suite 507
Washington Avenue Extension
Albany, New York 12205
(518) 456-0082
JWBailey@baileyjohnson.com